### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| KIMBERLY ANN LOCKHART, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Docket No. 06-cv-160-P-S |
| | ) | |
| PHILIP G. SMITH, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

### FINDINGS OF FACT & CONCLUSIONS OF LAW

Before the Court is Petitioner Kimberly Ann Lockhart's Petition for Return of Child (Docket # 1), which invokes her rights under the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), opened for signature Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 et seq.

At a hearing on the Court's September 29, 2006 Order to Show Cause, the Court set this matter for an evidentiary hearing, which was held on October 19, 2006. Based on the record now before the Court, the Court GRANTS the Petition for Return (Docket # 1). In connection with this ruling, the Court makes the following findings of fact and conclusions of law:

1

## I.       FINDINGS OF FACT

### A.       The Parties

1.       Petitioner Kimberly Ann Lockhart ("Lockhart") is a citizen of Canada and has most recently resided in Nova Scotia, Canada since July 2005.  She is the mother of three children, K.M.L., S.P.S. and G.T.S.  She currently works as a registered nurse.

2.       Respondent Philip Gavin Smith ("Smith") is a citizen of the United States and resides in Maine.  He is the father of S.P.S. and G.T.S.

3.       S.P.S. is the six year old daughter of Lockhart and Smith.  She has dual citizenship in the United States and Canada.

4.       G.T.S. is the seven year old son of Lockhart and Smith.  He has dual citizenship in the United States and Canada.

### B.       The Habitual Residence of S.P.S and G.T.S.

5.       Lockhart and Smith never married.  However, they cohabited in Maine as a couple from 1998 until Fall 2003, with one break in cohabitation in 2000 that followed an incident of domestic violence.

6.       S.P.S. resided in Maine with both parents from July 2000 (when she was born) until Fall 2003.  From Fall 2003 to July 2005, S.P.S. lived with her mother in Maine.

7.       G.T.S. resided in Maine with both parents from the time he was born in 1999 until Fall 2003.  Like his sister, G.T.S. lived with his mother in Maine from Fall 2003 to July 2005.

8.       From February 2004 until November 2005, Smith was incarcerated in Maine pursuant to a charge of aggravated assault with a deadly weapon.

9.      Since February 2004, Smith has not exercised any custodial rights with respect to G.T.S. or S.P.S, nor has he made any proper attempts to obtain a custody order giving him full or partial custody of these children.

10.     In or around November 2004, Lockhart informed Smith of her intention to move to Canada with the children where she had access to family support and a job opportunity.

11.     Smith disagreed with Lockhart's decision to relocate and it was his desire that Lockart, G.T.S. and S.P.S. remain in Maine.  Thus, Lockhart and Smith had no shared intent with respect to where the children would live although both parents understood that Lockhart had to exercise sole custody while Smith remained incarcerated.

12.     In late 2004 through early 2005, while Smith was incarcerated, Lockhart received treatment for ovarian cancer and during her treatment she reestablished relationships with family she had in Canada.  Given her medical situation and the available family support, Lockhart had further reason to relocate to Canada with her children.

13.     In addition, Lockhart saw a move to Canada as a way to end her abusive relationship with Smith and start a new life before his release from prison.

14.     In June 2005, Lockhart purchased a new home in Truro, Nova Scotia.  On July 7, 2005, Lockhart left Maine with the children and began residing in this new home.  She also began a new full-time job.

15.     Since August 2005, G.T.S. and S.P.S. have been enrolled in and regularly attended local schools in Nova Scotia.  They have done well in school, been involved in extracurricular activities and made new friends.  (See, e.g., Pet. Ex. 2.)

16.     In short, the children have lived in Nova Scotia for a year – a substantial period of time given their age – and are well settled in Nova Scotia.

17.     Since his release from prison in November 2005, Smith has known where the children were and maintained regular contact with them by phone.

18.     In March 2006, Smith requested an opportunity to have G.T.S. and S.P.S. visit him and his family in Maine.  Lockhart brought the children to Maine for this visit. Smith returned the children to Lockhart's custody without incident at the end of this visit.

19.     In July 2006, G.T.S. and S.P.S. again came to Maine for a prearranged visit with Smith.  This visit was originally supposed to last from July 1, 2006 until July 11, 2006. On July 9, 2006, Lockhart agreed to allow the visit to be extended until July 17, 2006 based on a request from the children's paternal grandparents.

20.     Based on these two visits and multiple phone calls, it is clear that Smith has regularly exercised his rights to access and to have contact with G.T.S. and S.P.S.  See Article 5 of Hague Convention (defining "right of access" as "the right to take a child for a limited period of time to a place other than the child's habitual residence").  However, he did not attempt to exercise or obtain any rights of custody until July 2006.  Thus, for some period of time, Smith acquiesced to Lockhart's decision to have the children reside in Canada.

21.     On July 18, 2006, when the children were to return to Canada, Smith made an application for temporary custody and received an ex parte order from Maine District Court granting him custody of G.T.S. and S.P.S.  (See Ex. D to Docket # 1.)  The Court considers this ex parte order to be of no consequence in light of Article 16 of the Hague Convention.

22.     Similarly, on July 18, 2006, Lockhart obtained an ex parte order from the Family Court for the Province of Nova Scotia, which awarded her temporary custody of G.T.S. and S.P.S.  (See Ex. B to Docket # 1.)  This ex parte order has similarly had no bearing on the decisions made by this Court pursuant to the Hague Convention.

**C.      The Hague Convention's Article 13(b) Grave Risk Defense**

23.     On July 13, 2006, Mr. Everett, a licensed social worker with Community Concepts, interviewed G.T.S. and S.P.S.  He also spoke with Smith and Lockhart.  These interviews were conducted to follow up on an abuse allegation made by Mr. Smith on July 7, 2006.  Based on his interviews, Mr. Everett determined there was no basis for concluding that the children had been abused by either parent.

24.     Notably, S.P.S. told Mr. Everett that her real home was in Canada.

25.     On September 24, 2006, G.T.S. and S.P.S. were seen by another licensed social worker, Mya Best.  During this visit, G.T.S. and S.P.S. both reported being spanked by Lockhart and having watched scary movies while in Lockhart's care.

26.     Ms. Best also testified that during a more recent visit with the children, S.P.S. indicated a desire to live with her mother and her sister.  In addition, Best testified that G.T.S. indicated that his father had told him that Lockhart was to blame for Smith going to jail.

27.     Based on her interviews with G.T.S. and S.P.S., Ms. Best ultimately diagnosed both children with adjustment disorder, which, she testified, reflects issues the children are having with adapting to the recent change in their living arrangements and their recent traumatic separation from their mother.

28.     To the extent that the reports made by G.T.S. and S.P.S. to Mr. Everett and Ms. Best were somewhat different, the Court believes that the July reports to Mr. Everett more accurately reflect the children's recollection of their experiences living with their mother and that the more serious September reports to Ms. Best likely represent some degree of coaching by Smith.

## II.     CONCLUSIONS OF LAW

1.     The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 11603. G.T.S. and S.P.S. were and continue to be located within the jurisdiction of this Court since the pending petition was filed.

2.     It is the burden of the Petitioner to show by a preponderance of the evidence that G.T.S. and S.P.S. have been wrongfully retained in Maine.

3.     Under Article 3 of the Hague Convention of the Civil Aspects of International Child Abduction, the removal or retention of a child is deemed wrongful where "it is in breach of the rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention" and "at the time of removal or retention those rights were actually exercised . . . or would have been exercised but for the removal or retention." See also 42 U.S.C. § 11603(f)(2) (noting that wrongful removal or retention "include a removal or retention of a child before the entry of a custody order regarding that child").

4.     Lockhart's decision to relocate to Canada with the children was not a wrongful removal of the children. Smith was not exercising rights of custody in July 2005 nor does the preponderance of the evidence suggest that he would have exercised rights of

custody upon his release from incarceration but for Lockhart's decision to relocate. In contrast, Lockhart has continually maintained and exercised her rights of custody over G.T.S. and S.P.S.

5.      The children were habitual residents of Maine until early July 2005.

6.      Although Lockhart and Smith did not have a shared intent about where the children should reside after July 2005, the Court finds that G.T.S. and S.P.S. are well settled in Nova Scotia and have become habitual residents of Canada.

6.      Smith has wrongfully retained G.T.S. and S.P.S. in Maine since July 18, 2005.

7.      Under Article 13(b) of the Hague Convention, the Court may refuse to return a child to the country of his or her habitual residence if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."

8.      A respondent opposing the return of a child pursuant to Article 13(b) must prove the allegations supporting the Article 13(b) exception by clear and convincing evidence. See 42 U.S.C. § 11603(e)(2)(A).

9.      There is no clear and convincing evidence that returning G.T.S. and S.P.S. to Canada presents the children with an intolerable situation or that it will result in the children being physically or psychologically harmed.

10.     In the course of these proceedings, each side has presented evidence suggesting that the other parent is less willing or less able to act in the best interest of G.T.S. and S.P.S.  Also, each side has presented evidence suggesting that these children have a sad history of being exposed to conditions, including domestic violence, that may well have adverse impact on their development and mental health.  This evidence may well be

relevant to the custody determination to be made by the relevant court in the children's country of habitual residence; however, it is irrelevant to the determination to be made by this Court.

11. Pursuant to Article 26 of the Hague Convention and 42 U.S.C. § 11607(b)(3), the Court "shall order the [R]espondent to pay necessary expenses incurred by or on behalf of the [P]etitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3). In order to comply with this provision of ICARA, Petitioner shall file an itemized bill of said costs within 14 days of this Order. Respondent may respond with any objections to Petitioner's itemized bill of costs within 14 days.

## III.    CONCLUSION

The Court hereby GRANTS the Petition for Return (Docket # 1) and ORDERS that G.T.S. and S.P.S. shall be immediately returned to the custody of their mother, Petitioner Kimberly Lockhart, so that they may be transported back to Canada. Nothing in this Order shall prevent the relevant courts in Canada from making an independent determination with respect to the custody of G.T.S. and S.P.S.

SO ORDERED.

 /s/ George Z. Singal
Chief United States District Judge

Dated at Portland, Maine, this 20th day of October 2006.

8